## HARDING v. UNITED STATES.

No. 50457.

United States Court of Claims.

July 13, 1953.

Daniel M. Gribbon, Washington, D. C., for plaintiff. Dean P. Kimball and Covington & Burling, Washington, D. C., were on the briefs.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen. H. Brian Holland, for defendant. Ellis N. Slack and Andrew· D. Sharpe, Washington, D. C., were on the brief.

WHITAKER, Judge.

This is a suit to recover income taxes for the years 1944 and 1945. Plaintiff is entitled to recover if he is entitled to ·carry back to those years a loss sustained by him in 1946 due to the charging off in that year of a bad debt in the sum of $345,746.28. He is entitled to do so if it was a loss "attributable to the operation of a trade or business regularly carried on by the taxpayer."

This indebtedness, which turned out to be a ·bad debt, was incurred in this way:

Plaintiff was a member of the brokerage firm of Chas. D. Barney & Company, and in its successor partnership, Smith, Barney & Company. The business of these firms on the New York Stock Exchange prior to 1929 had been handled by Alan Corey, and occasionally by other brokers. The business of Chas. D. Barney & Company grew to such an extent, however, that Mr. Corey was unable to give all of it his own personal attention and he was not able to adequately supervise the activities of other brokers who were ·called in from time to time to handle some of it. This led plaintiff to conclude that it would be desirable to secure a broker who would give his first attention to the partnership business, and who would have the time to handle all of it. He approached a cousin of his, Henry M. Watts, Jr., a customers' man in the brokerage business of Robert Glendinning & Co., at Philadelphia, with the proposition that plaintiff would lend him the money to purchase a seat on the New York Stock Exchange, with the understanding that Watts would devote his first attention to the business on the Exchange of Chas. D. Barney & Company. Watts consented, and plaintiff borrowed from the Irving Trust Company the sum of $442,500.00, which he turned over to Watts for the purchase of a seat on the Exchange. This purchase was made by Watts, and Watts thereafter, either through himself or through the part-

nership which he later formed, devoted his first attention to the business of the partnership of Chas. D. Barney & Company, and its· successor, Smith, Barney & Company. No part of the partnership's business on the Stock Exchange was handled by any of the partners after Watts took it over.

Plaintiff ·borrowed this money himself because the partnership was unable, or it was deemed inadvisable for it to borrow the money for this purpose, and plaintiff was the only member of the partnership who had sufficient assets to secure the loan. The entire transaction was, however, carried on with the concurrence of the other partners. Plaintiff's interest in acquiring this seat for Watts was solely to advance the interests of the partnership of Chas. D. Barney & Company. It was not purchased to promote plaintiff's own individual interest, except as his interest would be promoted by the promotion of the partnership· interest.

It is, of course, not unusual for a partner to pledge his individual assets to secure a partnership debt, or to borrow money for the partnership, nor is it unusual for an officer of a corporation to do so. This is done because the promotion of the partnership's interest, or the corporation's interests, promotes the interests of the individual.

Following the making of the loan at the Irving Trust Company, the value of the collateral which plaintiff had hypothecated to secure the loan greatly decreased, and the bank finally ·called on plaintiff to pay the loan, which he did with funds borrowed from the partnership, but which were later repaid to the partnership by plaintiff.

Watts was unable to repay plaintiff, and finally in 1946 he settled his indebtedness to plaintiff ·by the payment to him of the sum of $82,251.88. The balance of $345,-746.28 was charged off as ·a bad debt in the year 1946. This was allowed by the Commissioner of Internal Revenue in computing plaintiff's income taxes for 1946, but he has disallowed plaintiff's claim of his right to carry back to the years 1944 and 1945 the resulting loss in 1946.

Plaintiff's right to carry back this loss depends upon the proper construction of

section 122(d) (5) of the Internal Revenue Code, 26 U.S.C. (1946 Ed.). Section 122(a) defines "net operating loss" to mean "the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d)." Subsection (d) provides:

"The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

\* \* \* \* \* \*

"(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. \* \* \*"

Plaintiff is not entitled to the deduction of this bad debt if it was "not attributable to the operation of a trade or business regularly carried on" by him.

Plaintiff's business was a brokerage business carried on through the instrumentality of the brokerage firm of Chas. D. Barney & Company and its successor Smith, Barney & Company. Plaintiff borrowed the money in order to promote the business of this partnership, and, therefore, his own business, and it would, therefore, seem plain that the loss sustained by plaintiff on account of this bad debt was a loss attributable to the carrying on of his business through the instrumentality of the brokerage firm of Chas. D. Barney & Company and its successor.

Plaintiff's sole purpose in borrowing the money was to promote the interests of this partnership. Plaintiff's business was carried on through the partnerships, and the loan therefore was made to promote plaintiff's business. The loss of a portion of the loan was, therefore, directly attributable to the carrying on of plaintiff's business.

It is difficult to see how plaintiff could be entitled to the deduction of this bad debt from his income in 1946 as a loss incurred in his business, as the Commissioner of Internal Revenue held, and not be entitled to deduct it in computing his loss for carry-back purposes, since all that plaintiff need show to be entitled to the carry-back is that the loan which became a bad debt was "attributable to the operation" of his trade or business.

We are of the opinion plaintiff is entitled to recover. See Pierce v. Commissioner, 18 B.T.A. 447; Siarto v. Commissioner, 62 T.C.M. 3; affirmed 6 Cir., 171 F.2d 293; Brown v. Commissioner, 92 T.C.M. 1054.

The carry-back of a part of this loss to 1944 results in an overassessment for that year in the amount of $69,086.64. The carry-back of the remainder of the loss to 1945 results in an overassessment for that year of $28,439.48.

Plaintiff therefore is entitled to recover of the defendant $69,086.64 for 1944, and $28,439.48 for 1945, or a total of $97,526.12, plus interest as provided by law. Judgment will be entered accordingly.

JONES, Chief Judge, and HOWELL, MADDEN and LITTLETON, Judges, concur.