*Decisions will be entered under Rule 50.*

DARWIN O. NICHOLS AND J. EVELYN NICHOLS, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60442. Filed March 21, 1958.

*James J. Waters, Esq.*, for the petitioners.
*Claude R. Sanders, Esq.*, for the respondent.

FISHER, *Judge:* Respondent determined deficiencies in income taxes against petitioners for the taxable year 1951 in the amount of $3,458.38.

The principal issue presented for our decision is whether the loss in 1951 resulting from worthlessness of the loans made by petitioner to a corporation, of which he was an officer-stockholder, is deductible as a business bad debt under section 23 (k) (1), as claimed by petitioner, or whether it is deductible as a nonbusiness bad debt within the meaning of section 23 (k) (4) as determined by respondent. Other issues involve (a) determination of amount of long-term capital loss upon sale or exchange of stock; and (b) whether petitioner is entitled to a deduction for a claimed loss arising out of "advances" of materials to a corporation by a partnership of which petitioner was an equal partner.

### FINDINGS OF FACT.

Some of the facts are stipulated and are found as stipulated and incorporated herein by this reference.

Darwin O. and J. Evelyn Nichols are husband and wife, residing in Kansas City, Missouri, and filed their joint Federal income tax return on a calendar year basis for the taxable year 1951 with the then collector of internal revenue for the sixth district of Missouri at Kansas City, Missouri. J. Evelyn Nichols is a petitioner herein because of having joined with her husband in filing a joint return, and Darwin O. Nichols will hereinafter sometimes be referred to as the petitioner.

Petitioner has been a member of the partnership, L. O. Nichols & Son Manufacturing Co. (sometimes referred to hereinafter as partnership) since 1940, composed of himself and his father. Petitioner has a 50 per cent interest in said partnership, which is in the business of manufacturing dies and metal stamps used in producing metal parts for other manufacturers to incorporate in their finished items.

In 1947 petitioner became acquainted with James and Marion Walker, who were in the business of hand painting and decorating metal and ceramic giftware, such as metal wastebaskets, silent butlers, ashtrays, tea caddies, and allied products. During this period the Walkers purchased a "few items" of merchandise from the partnership.

About 2 years later, in January 1949, the petitioner advanced the amount of $2,000 to the Walkers.

On March 30, 1949, a corporation known as the Marion Walker Company, Inc., hereinafter sometimes referred to as the corporation, was organized and incorporated under the laws of the State of Missouri. Said corporation was organized for the purpose of painting and decorating metal and ceramic items. On March 30, 1949, in consideration of the aforesaid advances in the amount of $2,000, petitioner was issued 50 shares of stock in the corporation at a stated value of $2,000. Petitioner was treasurer and a director of the corporation. Marion and James L. Walker were each issued 75 shares of stock in the corporation. No other shares of stock were issued.

James Walker orally agreed to use merchandise in unspecified quantities which the partnership would produce in the rough, such as brass parts, trays, and silent butlers. There was no written agreement wherein Walker or the corporation agreed to purchase anything from the partnership.

From January 5 to December 27, 1949, petitioner advanced his personal funds to the corporation in the amount of $17,813.71, which was not charged on the books of the partnership.

During 1949, the partnership advanced to the corporation material which had cost the partnership $1,634.99. Said materials had been charged to the purchases account of the partnership and the partnership received a deduction therefor on its tax return. The materials were not charged on the partnership books to petitioner's drawing account, or in any other way charged out on the partnership books. The partnership inventory, however, was reduced to the extent of the cost of said materials.

During the years 1949, 1950, and 1951, the partnership had gross receipts and net income as follows:

| Year | Gross receipts | Net income |
|------|---------------|-----------|
| 1949 | $99,729.74 | $28,564.14 |
| 1950 | 95,568.86 | 24,924.57 |
| 1951 | 115,960.81 | 43,469.81 |

The corporation never operated at a profit and after about a year of existence the business failed.

Prior to the taxable year 1951, petitioner recovered $9,265.62 of the total indebtedness due him from the corporation. Petitioner sustained a net loss of $8,548.09 on the loans to the corporation.

During the taxable year 1951, petitioner sold or exchanged his 50 shares of stock in the corporation, and merchandise with a value of

about $200, to the Walkers, and in consideration thereof petitioner received $750 cash. In connection with this transaction, petitioner incurred attorney's fees in the amount of $100.

On their 1951 income tax return, prepared by a certified public accountant, petitioner deducted, as an "investment loss," the net amount of $14,089.38, of which the amount of $2,000 was reported as a loss on his sale of capital stock of the corporation. Said loss was claimed on the basis of the worthlessness of the stock purchased by petitioner from the corporation, and the worthlessness of loans made by petitioner to the corporation.

Respondent, in his notice of deficiency, determined the loss incurred in connection with petitioner's sale or exchange of the corporation's stock to be a long-term capital loss, subject to the limitations of section 117, I. R. C. 1939, and that the claimed loss attributable to worthlessness of loans by petitioner to the corporation represented a nonbusiness bad debt under section 23 (k) (4). The balance of said nonbusiness bad debt is referred to in the statutory notice as $12,089.38, but the figures in the stipulation of facts show the correct balance to be $8,548.09.

There was no direct or proximate relationship between the trade or business carried on by petitioner and the loans in question to the corporation.

### OPINION.

Respondent, in his statutory notice, determined that, of the aggregate amount of $14,089.38 claimed in full by petitioner on his tax return as an investment loss, the sum of $12,089.38 represents a nonbusiness bad debt under section 23 (k) (4), to be treated as a short-term capital loss;[1] and that the balance of $2,000 represents a long-term capital loss on the sale or exchange of stock, subject to the statutory limitations provided in sections 23 (g) and 117 of the 1939 Code

---

[1] Internal Revenue Code of 1939.
SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions :

\* \* \* \* \* \* \*

(k) BAD DEBTS.—
(1) GENERAL RULE.—Debts which become worthless within the taxable year; \* \* \* This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.

\* \* \* \* \* \* \*

(4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

with respect to capital losses.[2]  Respondent contends, on brief, that petitioner advanced to the corporation a total amount of $17,813.71 during 1949 and that prior to the taxable year 1951, petitioner recovered the amount of $9,265.52, so that, as a result, the net loss sustained by petitioner on the advances to the corporation was $8,548.09. Our findings, based on the stipulation of the parties, sustain respondent's contention as to the net amount of the bad debt.  Respondent also contends that petitioner sustained a long-term capital loss in the amount of $1,550 during 1951 from the sale or exchange of his stock in said corporation.  Petitioner concedes that the sum of $2,000 paid for the stock should not have been included in the computation on his return to determine the amount of the debt loss in question and calculates that the sale of the stock resulted in a long-term capital loss of $1,350 in 1951.  We think it is clear (and to petitioner's possible advantage) that the long-term capital loss was $1,550 instead of $1,350, and we accept the former amount as calculated by respondent.

Petitioner claims that he is entitled to deduct the full amount of the loans made by him to the corporation as a business bad debt under section 23 (k) (1) to the extent that they remained unpaid in 1951. The significant issue emerging from this contention is whether the loss resulting from the aforesaid loans (which both parties agree became worthless in 1951) was proximately related to the conduct of petitioner's trade or business as a copartner of a firm engaged in the manufacture of dies and metal stamps, and hence deductible in full as a business bad debt.  Respondent's determination is, of course, prima facie correct and the burden of proof is on petitioner to demonstrate error in such determination.  We are of the opinion, upon a careful

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
   (g) CAPITAL LOSSES.—
      (1) LIMITATION.—Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117.
      (2) SECURITIES BECOMING WORTHLESS.—If any securities (as defined in paragraph (3) of this subsection) become worthless during the taxable year and are capital assets, the loss resulting therefrom shall, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets.
      (3) DEFINITION OF SECURITIES.—As used in paragraph (2) of subsection the term "securities" means (A) shares of stock in a corporation, and (B) rights to subscribe for or to receive such shares.
SEC. 117. CAPITAL GAINS AND LOSSES.
   (b) PERCENTAGE TAKEN INTO ACCOUNT.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income :
   100 per centum if the capital asset has been held for not more than 6 months ;
   50 per centum if the capital asset has been held for more than 6 months.
   *      *      *      *      *      *      *
   (d) LIMITATION ON CAPITAL LOSSES.—
   *      *      *      *      *      *      *
      (2) OTHER TAXPAYERS.—In the case of a taxpayer, other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the net income of the taxpayer of [or] $1,000, whichever is smaller.  For purposes of this paragraph, net income shall be computed without regard to gains or losses from sales or exchanges of capital assets. * * *

consideration of the entire record and for the reasons hereinafter stated, that petitioner has failed to meet his burden.

It is well established that an individual, to be entitled to a deduction of a business bad debt, must show that the loss resulting from the debt's becoming worthless bears a proximate relation to a trade or business in which he was engaged in the year in which the debt became worthless. Sec. 39.23(k)–6, Regs. 118 (derived from H. Rept. No. 2333, 77th Cong., 2d Sess., p. 76, 1942–2 C. B. 431), approved as valid in *Hickerson* v. *Commissioner*, 229 F. 2d 631 (C. A. 2, 1956), affirming T. C. Memo. 1954–237; *Jan G. J. Boissevain*, 17 T. C. 325 (1951); and *Hadwen C. Fuller*, 21 T. C. 407 (1953). Although Congress did not define the term "trade or business," it made it clear in the committee reports that this concept was not intended to encompass all activities engaged in for profit, but was used in the realistic and restricted sense of a going trade or business. See *Commissioner* v. *Smith*, 203 F. 2d 310 (C. A. 2, 1953), certiorari denied 346 U. S. 816. "The question whether a debt is one the loss from the worthlessness of which is incurred in the taxpayer's trade or business is a question of fact in each particular case." Sec. 39.23(k)–6, Regs. 118. This section of the regulations also provides in part as follows:

(b) The character of the debt for this purpose is not controlled by the circumstances attending its creation or its subsequent acquisition by the taxpayer or by the use to which the borrowed funds are put by the recipient, but is to be determined rather by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. *If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt is not a non-business bad debt for the purposes of this section.* [Emphasis supplied.]

There is no question here that petitioner, during the taxable year 1951, was engaged in a trade or business within the intendment of section 23 (k) of the 1939 Code, particularly that of being a copartner in a company engaged in the manufacture of dies and metal stampings. While respondent does not contend otherwise, we think it proper to mention that an individual, by reason of being a partner in a business, is considered to be engaged in a trade or business of his own within the meaning of the revenue laws. *Dwight A. Ward*, 20 T. C. 332, 343 (1953), affd. 224 F. 2d (C. A. 9, 1955); *Flood* v. *United States*, 133 F. 2d 173, 179 (C. A. 1, 1943); *Harding* v. *United States*, 113 F. Supp. 461, 463 (Ct. Cl., 1953).

We note at the outset that petitioner does not contend that he was in the separate and distinct business of promoting other business ventures or enterprises. Nor does he urge that as an integral part of his partnership business he was engaged in a business of promoting, organizing, managing, financing, or lending moneys to corporations for the purpose of producing finished metal products. Accordingly, pe-

titioner does not attempt to come within the scope of the so-called line of promoter cases, such as *Weldon D. Smith*, 17 T. C. 135 (1951), revd. 203 F. 2d 310 (C. A. 2, 1953); *Henry E. Sage*, 15 T. C. 299 (1950); and *Vincent C. Campbell*, 11 T. C. 510 (1948). See also *Langdon L. Skarda*, 27 T. C. 137, 148 (1956), affd. 250 F. 2d 429 (C. A. 10, 1958). Similarly, petitioner does not claim that the business of Marion Walker Company, Inc., of which he was an officer-stockholder and to which he made the loans in question, was his business. Cf., e. g., *Burnet* v. *Clark*, 287 U. S. 410 (1932); *Omaha National Bank* v. *Commissioner*, 183 F. 2d 899 (C. A. 8, 1950), affirming a Memorandum Opinion dated September 20, 1949; *Dalton* v. *Bowers*, 287 U. S. 404 (1932); and *Deputy* v. *duPont*, 308 U. S. 488, 493–494 (1940).

Petitioner does, however, contend that the bad debts in question are "proximately related" to the metal-stamping business of the partnership, i. e., petitioner's trade or business, and therefore fully deductible under section 23 (k) (1). In essence, petitioner argues that the loans which he extended to the corporation during 1949 were not made to protect his individual investment in the stock of said corporation (i. e., a 25 per cent stock interest) but rather to furnish funds to enable the corporation to purchase products of the partnership, thereby increasing the sales activity of the partnership during that period. Petitioner concludes in such circumstances that the loss from the worthlessness of the debt was proximately related to the conduct of and incurred in his trade or business.

We find no merit in petitioner's position. The evidence discloses that the partnership was in the business of fabricating dies and metal stamps for other manufacturers to use as component parts in assembling their finished products while the corporation was in the separate and distinct business of painting and decorating metal and ceramic items, such as ashtrays, metal wastebaskets, and allied products. To bolster his position that the newly organized corporation was expected to provide "a market for the output of the partnership," petitioner testified that James Walker, one of the dominant corporate stockholders, had agreed to use metalware produced by the partnership, and that the loans in question, $17,813.71, were made for this reason. We do not think the record supports this view. The partnership did, in 1949, advance materials to the corporation at cost in the amount of $1,634.99, but, although the partnership's inventory was reduced to the extent of such cost, there is no evidence that the cost of such materials was credited to sales by the partnership, or included as income in the partnership tax returns. Nor was the item charged to petitioner's account on the partnership books. To the contrary, the affirmative evidence is that the materials were never charged out on the partnership books.

The affirmative evidence is also to the effect that, although the loans were made in 1949, the books of the partnership reflect no sales to the corporation in 1949, 1950, or 1951. Moreover, there was no written agreement with respect to purchase of any partnership products by the corporation, and the oral discussion between petitioner and Walker specified neither amounts nor types of products to be purchased. Likewise, although petitioner was a stockholder, officer, and director of the corporation, there is no evidence as to what use was made of the loans, or why petitioner continued to make them when the partnership books showed no sales to the corporation. Petitioner testified that the corporation did purchase items which the partnership manufactured, but failed to specify when, or in what quantities, or why the partnership books failed to reflect any such sales.

Petitioner, bearing the burden of proof, failed to produce the Walkers as witnesses. Petitioner explains this by claiming that there was ill will on the Walkers' part. Be that as it may, we cannot assume that the Walkers would have perjured themselves. In any event, we cannot supply corroboration when it is not produced, whatever reason may lie behind the failure to call the witnesses. We add, in fairness, however, that respondent had the same opportunity to produce the Walkers, although the reason to do so was not as compelling on his part.

We think that petitioner had some indefinite or generalized hope of future profit, either through his partnership interest, or as a stockholder of the corporation, or both, which he hoped might develop in the wake of the loans which he made, but the vagueness of the arrangements, the lack of any definite understanding or agreement, the failure to condition the loans upon some ascertainable requirement that the corporation "follow through" by making actual purchases in some quantity, the failure to reflect any sales to the corporation on the books of the partnership (or to introduce the corporate records to show purchases from the partnership, if any purchases were made), the failure to show a single specific sale to the corporation (from which we exclude the so-called advances of materials in the amount of $1,634.99 which were never reflected on the partnership books), together paint a picture which falls short of, and is inconsistent with, the view that the loans bore a proximate business relationship to the business of the partnership or that of petitioner as a partner therein.

Our most recent consideration of this problem was in *Dominick J. Salomone*, 27 T. C. 663 (1957). There, the taxpayer (sole proprietor) was a broker and wholesaler of food products and made loans to a Florida corporation, of which he was an officer-stockholder, en-

▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆

gaged in the processing and canning of citrus products. Although the taxpayer testified that his sole proprietorship acted as agent of the Florida company, he was unable to establish that any of the receipts of the sole proprietorship had any relation to the Florida company. In short, the taxpayer, as here, was unable to produce any evidence of sales or purchases of merchandise by or from his regular business as broker or wholesaler attributable to the debtor corporation. Holding that the taxpayer's loans to the Florida company which became worthless were deductible only as a nonbusiness bad debt under section 23 (k) (4), we said (pp. 669–670) :

petitioner testified that the D. J. Salomone Company, which was the name under which petitioner did business as a sole proprietor, was the agent for the Florida company. Although petitioner reported total gross receipts from this sole proprietorship business in 1952 of $31,644.79, he was not able * * * to show that any of these receipts had any relation to the Florida Company. * * * We have, therefore, found as an ultimate fact that the loss resulting from petitioner's loans to the Florida company had no proximate relation to petitioner's sole proprietorship business.

We are of the opinion that the rationale there expressed is applicable here. See also *Edward Koppelman*, 27 T. C. 382 (1956).

In support of his position, petitioner cites, *inter alia*, *Robert Cluett, 3rd*, 8 T. C. 1178 (1947) ; *Stuart Bart*, 21 T. C. 880 (1954) ; and *J. T. Dorminey*, 26 T. C. 940 (1956), all of which, however, are readily distinguishable from the instant case on the facts, and are not here controlling.

In *Cluett*, the taxpayer's business consisted of acting as the floor member for various partnerships in the purchase and sale of securities at the New York Stock Exchange, and as part of this business he owned a seat on the Exchange. The membership of the Exchange was increased one-fourth and each member was given the right to transfer his proportionate part (one-fourth) of an additional membership within 3 years. The taxpayer sold the fractional accretion to his Exchange seat and accepted in part payment certain promissory notes. A portion of this indebtedness became worthless in 1943 after the buyer became bankrupt. We held that the loss sustained was a business bad debt, indicating that the debt and loss therefrom arose in the course of the taxpayer's business, which involved owning an Exchange seat, and that a sale of the accretion thereto was "required" or necessary if the taxpayer was to realize any benefit therefrom.

The *Bart* case, decided on the authority of *Cluett*, is similarly distinguishable from the instant case. There the taxpayer was engaged in business as an advertising agent. A certain corporate publication was one of the taxpayer's clients. Through that relationship, the taxpayer had obtained other clients, some of whom advertised in the aforementioned publication. At certain times, the taxpayer made

loans to the publication in order to retain it as a client on a profitable basis and also to hold onto other clients' advertising in the publication. We concluded on the facts therein that the loss incurred upon the loans which subsequently became worthless was a business bad debt proximately related to the conduct of the taxpayer's business.

In *J. T. Dorminey*, the taxpayer was engaged in the produce business. He was a major stockholder in a corporation formed to bring bananas into this country. As a part of his produce operations, the taxpayer had a market for two carloads of bananas per week, but could not obtain them because of economic conditions. One of petitioner's primary motives in helping to organize the corporation and buying stock thereof was to help insure a supply of bananas for his produce business. Thereafter, when the corporation encountered financial difficulties, taxpayer made loans to the corporation which became worthless. Taxpayer received a few carloads of bananas before the corporation became bankrupt. Upon these facts, we held that the bad debt loss was incidental to and proximately related to the taxpayer's produce business and consequently deductible under section 23 (k) (1) as a business bad debt.

We have found no authority which warrants our holding that loans made under the loose and indefinite arrangements here presented, where no sales were ever reflected on the books of the lender's partnership, are entitled to treatment as business bad debts of the lender. Upon the record as a whole, we find that petitioner has failed to establish the right to a business bad debt deduction in relation to the loans or advances which he made. The existence of the essential proximate relationship between the loans and petitioner's business, as referred to in *Tony Martin*, 25 T. C. 94, 102, has not been proved in the instant case.

With respect to the materials advanced by the partnership to the corporation, in the amount of $1,634.99, petitioner admits that the item was charged to purchases by the partnership, and that the partnership received the benefit of a deduction of that amount in its income tax return by decreasing inventory *pro tanto*. The partnership did not credit the advanced materials to sales, and there is no evidence that the amount of the advances was charged to accounts receivable, or was accrued as or reflected in income on the partnership books or income tax return. Moreover, the advances were not charged to petitioner's account as a partner. Allowance of a bad debt deduction to petitioner is not warranted, therefore, either as to the full amount of $1,634.99 or one-half thereof. It should be noted that not only is there no basis for allowance of the deduction, but also that the effect of such allowance would be to duplicate a deduction already taken.

*Decision will be entered under Rule 50.*