B. A. Mays and Mildred Aleene Mays v. Commissioner. Harold A. Mears and Rowena C. Mears v. Commissioner.
Mays v. Commissioner
Docket Nos. 56780, 57384.
United States Tax Court
T.C. Memo 1958-156; 1958 Tax Ct. Memo LEXIS 72; 17 T.C.M. (CCH) 773; T.C.M. (RIA) 58156; August 15, 1958
*72 Held: Respondent's disallowance of claimed business bad debt deductions, sustained. Clyde W. Key, Esq., Bank of Knoxville Building, Knoxville, Tenn., for the petitioners. Raymond Whiteaker, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax and additions to tax as follows: Addition to Tax
Docket
Sec. 294
Sec. 294
No.
Year
Deficiency
(d)(1)(A)
(d)(2)
56780
1952
$4,715.28
57384
1952
5,102.76
$105.09
$70.06 The sole issue for decision is whether petitioners are entitled to deductions as business bad debts in the year 1952 for their advances to Knoxville Cigar Stores Company, Inc., which became worthless during that year. Findings of Fact The stipulated facts and attached exhibits are incorporated herein by this reference. During the year 1952, B. A. Mays (hereinafter referred to as Mays) and Mildred Aleene Mays were husband and wife. During that year Harold A. Mears (hereinafter referred to as Mears) and Rowena C. Mears were husband and wife. During the year 1952 both the Mayses and Mearses resided in Knoxville, Tennessee, *73 and on March 17, 1953, each couple filed a joint Federal income tax return for the year 1952 with the district director of internal revenue for the district of Tennessee. Mays and Mears hereinafter jointly will be referred to as petitioners. Since about 1928, Mears has been division sales manager in the states of Tennessee, Kentucky, Ohio, Indiana and West Virginia for the Hav-A-Tampa Cigar Company, manufacturer of several commonly known brands of cigars. Prior to 1928, the Hav-A-Tampa line of cigars had been introduced into this territory in only a minor way, and the established wholesale distributors and chain store retail outlets were not interested in promoting the sale of these relatively unknown brands of cigars. In order to meet this competitive situation and introduce Hav-A-Tampa merchandise to the territory, Mears determined to organize and acquire a proprietary interest in some wholesale distributors of his own. He accordingly assisted in the organization of, obtained financing for and acquired stock in corporations in Knoxville, Nashville, Bristol and Jackson, all in the state of Tennessee, that thereafter sold Hav-A-Tampa products at wholesale. One of the corporations *74 thus promoted by Mears was John Housley Cigar Company, Inc. (hereinafter referred to as Housley), which had its situs in Knowx County, Tennessee, and is and has been engaged as a distributor of cigars, cigarettes, tobacco, pipes, sundries, confections and other similar and related merchandise. Housley has an outstanding capital stock consisting of 750 shares, of which, during the period of time under discussion, Mays has owned 60 shares and Mears has owned 100 shares. Many years ago Housley became financially interested in certain retail outlets that handled merchandise of which Housley was a wholesale distributor. The operation of these retail outlets by Housley proved to be very profitable to it, and also materially aided in the introduction of Hav-A-Tampa products in Mears' territory and substantially increased his personal income. Under the provisions of Chapter 133 of the Public Acts of the General Assemply of Tennessee of 1937, the Commissioner of Finance and Taxation of the state of Tennessee was authorized to allow any dealer, distributor or agent a discount of 7 1/2 per cent of the value of tobacco tax stamps as compensation for selling and affixing such stamps to tobacco *75 products. By Chapter 126 of the Public Acts of the General Assembly of Tennessee of 1941, said Commissioner of Finance and Taxation was authorized to grant said discount to persons, firms or corporations "who sell at wholesale only" taxable tobacco products. Shortly after the enactment of said statute of 1941, the directors and officials of Housley concluded that it was not advisable that said corporation continue to be interested in its retail outlets, as that would deprive it of the right to purchase tobacco tax stamps at a discount. Housley had approximately 2,000 customers, and if it continued to own and operate one retail cigar store it would lose the benefit of the 7 1/2 per cent discount on tobacco tax stamps sold to all of these customers. When Housley determined to divest itself of its retail outlets, the petitioners, who were then not only stockholders but employees of Housley, negotiated for the purchase from Housley of its entire interest in said retail outlets, and petitioners thereafter operated said retail outlets, together with others as co-partners, until said business was incorporated. In 1947 said retail business was incorporated under the laws of the state *76 of Tennessee under the name of Knoxville Cigar Stores Company, Inc. (hereinafter referred to as Knoxville Cigar). Mays acquired and thereafter owned 20 per cent of the outstanding capital stock of said newly organized corporation; Mears acquired and thereafter owned 70 per cent of said capital stock; and one, Helm acquired and thereafter owned the remaining 10 per cent of the outstanding capital stock of said corporation. In 1948, it was decided that Knoxville Cigar would expand its business by acquiring additional retail outlets and by enlarging its existing retail outlets. For the purpose of financing this expansion program, petitioners, on October 6, 1948, each loaned to Knoxville Cigar the sum of $15,000. At the time of the incorporation of Knoxville Cigar, and as a result of the conveyance to it by Mays of certain personal property to be used in its business, said corporation became indebted to Mays on open account in the sum of $775.08, and in like manner said corporation became indebted to Mears in the sum of $1,550.16. On October 6, 1948, said debts referred to above were consolidated, and as evidence thereof said Knoxville Cigar executed and delivered to Mays its promissory *77 note in the amount of $15,775.08, and to Mears its promissory note in the amount of $16,550.16. At the time said debts were created, Knoxville Cigar was entirely solvent. Before the 1948 expansion program of Knoxville Cigar was commenced and said loans of $15,000 each were made to it by petitioners, the petitioners thought they had a commitment from a local bank to finance the program through loans to Knoxville Cigar; however, when the time came to pay the contractors, the bank demanded that petitioners endorse the corporation's notes. They decided, instead, to loan the required funds to the corporation personally. By writing, petitioners agreed to subordinate repayment of such loans to the trade accounts of Knoxville Cigar. During 1952, Mears received a salary from the Hav-A-Tampa Cigar Company, dividends from his capital stock in Housley, and a bonus of 5 per cent of the net profits of Housley. He was supposed to, but did not, receive a salary as an official of Knoxville Cigar. During 1952, Mays was general manager of Housley and drew a bonus therefrom of $4,455.54, based on 5 per cent of the net profits of the corporation. He was also vice-president of Knoxville Cigar and *78 was supposed to, but did not, receive a salary therefor. He was a supervisor of the Bristol, Tennessee, wholesale distributor, and drew a bonus from that company. During the years 1937 to 1952, inclusive, Housley paid dividends to its stockholders in the amount of $355,000. During the years 1950 to 1952, inclusive, Knoxville Cigar purchased substantial quantities of merchandise from Housley. During the calendar year 1952, Knoxville Cigar met with financial reverses which required that its affairs be completely liquidated. The liquidation occurred during the calendar year 1952, and thereupon the debts to the petitioners became completely worthless. On their income tax returns for the year 1952, Mays and Mears each claimed a business bad debt deduction with respect to the worthlessness of the debts owed each of them in the amounts of $15,775.08 and $16,550.16, respectively. Opinion The only issue for decision is whether the losses incurred by petitioners as a result of the worthlessness of the debts owed them by Knoxville Cigar are fully deductible as business bad debts under section 23(k)(1), Internal Revenue Code of 1939, [1] as contended by petitioners or whether such losses *79 are only deductible as non-business bad debts within the purview of section 23(k)(4), Internal Revenue Code of 1939, [2] as contended by respondent. *80 Deductions are matters of legislative grace and the taxpayer must bring himself squarely within the statute under which the deduction is claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435; Deputy v. DuPont, 308 U.S. 483. A business bad debt deduction is allowable under section 23(k)(1) only where the taxpayer shows that the loss resulting from the debt's becoming worthless bears a proximate relation to the taxpayer's trade or business in the year the debt became worthless. Regs. 111, sec. 29.23(k)-6; Jan G. J. Boissevain, 17 T.C. 325; S. D. Ferguson, 28 T.C. 432, affd. 253 Fed. (2d) 403; Darwin O. Nichols, 29 T.C. 1140 (March 21, 1958). On brief, petitioners contend that they were in the business "of promoting the sale of cigars through the media of their wholesale and retail corporate entities." By arguing (or admitting) that they were carrying on their cigar sales promotion business through the media of corporate entities petitioners have pointed up the untenableness of their position, for it is well settled that the business of a corporation is not considered to be the business of its stockholders *81 or officers. Burnet v. Clark, 287 U.S. 410; Jan G. J. Boissevain, supra.In the instant case, Housley, not petitioners, was engaged in the business of wholesale distribution of cigars and Knoxville Cigar, not petitioners, was engaged in the retail distribution of cigars. Petitioners were merely stockholders and employees of the two corporations, and were also officers of Knoxville Cigar. Such activities of the petitioners insofar as they have been presented do not constitute a trade or business within the meaning of the applicable revenue laws. Charles G. Berwind, 20 T.C. 808, affd. per curiam, 211 Fed. (2d) 575. In these circumstances, it is clear that the losses incurred by petitioners did not bear a proximate relation to any trade or business carried on by petitioners during the year 1952. Accordingly, Decisions will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - (1) General rule. - Debts which become worthless within the taxable year; * * * This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. * * *↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - * * *
(4) Non-business debts. - In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩