Ray Franconi and Lena Franconi v. Commissioner.
Franconi v. Commissioner
Docket No. 90627.
United States Tax Court
T.C. Memo 1965-87; 1965 Tax Ct. Memo LEXIS 247; 24 T.C.M. (CCH) 456; T.C.M. (RIA) 65087; April 7, 1965
*247 1. Petitioners are not entitled to deduct loss on stock which became worthless in 1957 as an ordinary loss. Stock did not qualify as small business corporation stock under sec. 1244, I.R.C. 1954. 2. Loss on loan made to corporation of which petitioner was employee was a nonbusiness bad debt, deductible only as short-term capital loss. 3. Petitioners are not entitled to a deduction for loss on accounts receivable due from an insolvent corporation to a partnership in which petitioner was a partner, or for out-of-pocket expenses incurred by partnership in connection with supplying coal to the corporation. Petitioners failed to prove that the accounts receivable were ever included in income of partnership or that expenses were incurred in the years before the Court. Forrest Andrews, for the petitioners. Vallie C. Brooks, for the respondent. DRENNEN
Memorandum Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioners' income tax for the taxable years 1957 and 1958 in the amounts of $694.17 and $602.92, respectively. The issues for decision are: (1) Whether petitioners are entitled to an ordinary loss deduction when stock of a corporation became worthless in 1957. (2) *248 Whether petitioners are entitled to a business bad debt deduction when a loan advanced to the corporation several years earlier became worthless in 1957. (3) Whether petitioners are entitled to a deduction for a loss when their claim for certain accounts receivable from the debtor corporation became worthless, where they have failed to prove that the income represented by the accounts receivable has ever been included in income for either a prior or the current year. The facts have been fully stipulated and are found accordingly. The stipulation, and the exhibits attached thereto, are incorporated herein by this reference. Only those facts necessary to a full understanding of the issues presented for decision will be discussed. Petitioners are husband and wife and filed their joint Federal income tax returns for the years in question with the district director of internal revenue at Nashville, Tenn. During the taxable years in question they resided in Norris, Tenn., and they now reside in Knoxville, Tenn. For the taxable years in question petitioner kept their records and filed their returns on the cash receipts and disbursements method of accounting. During the years 1953 through *249 1956, Ray Franconi (hereinafter referred to as Ray) was employed as plant manager of the Lake City Lightweight Aggregate Corp. (hereinafter referred to as Lake City), of Lake City, Tenn. Lake City was incorporated under the laws of the State of Tennessee in 1950 or 1951 to engage in the business of manufacturing a new lightweight aggregate. Ray was an officer of Lake City from sometime in 1952 until the corporation was declared insolvent pursuant to a general creditors' bill filed on or about June 19, 1956, in the Chancery Court of Anderson County, Tenn.
Issue 1. Worthless Stock Ray acquired 500 shares of Lake City [1] stock during the years 1950 through 1953 at a cost of $5,000, which was Ray's basis in the stock in 1957. The stock became worthless in 1957. On their income tax returns for each of the calendar years *250 1957 and 1958, petitioners deducted the amount of $3,000 as a loss resulting from this stock becoming worthless. In the statutory notice of deficiency respondent determined that the $3,000 stock loss claimed for each of these years was not proper, because the loss resulting from worthless stock should be reported as a capital loss. Accordingly, respondent determined that under section 165(g)[2] and section 1211, [3] *251 petitioners were entitled only to a capital loss deduction in each of the years 1957 and 1958 in the amount of $1,000. Petitioners' only argument on this issue appears to be that they are entitled to an ordinary loss deduction on account of the Lake City stock becoming worthless in 1957 because the loss was incurred in connection with the stock of a small business corporation as provided for under section 1244. [4] *252 Section 1244 was added to the 1954 Code by the Small Business Tax Revision Act of 1958 [5] to allow an ordinary loss deduction for losses on stock of a small business corporation. In order to qualify under section 1244, several requirements must be satisfied. One of these requirements is that the common stock must be issued pursuant to a written plan adopted by the corporation after June 30, 1958, to offer only such stock during a period specified in the plan ending not later than 2 years after the date the plan is adopted. T.D. 6495, 1960-2 C.B. 226. The facts in this case, as stipulated by the parties, clearly reveal that the worthless stock was acquired during the years 1950 through 1953, prior even to the enactment of section 1244, and there is no evidence that the stock was issued pursuant to a written plan adopted by Lake City after June 30, 1958. The stock does not qualify as "section 1244 stock," and we perceive no other basis for allowance of the loss as an ordinary loss. We sustain respondent's determination on this first issue. Issue 2. Bad Debt Deduction In 1951, Ray made a loan of $3,700 to *253 Lake City, which became worthless in 1957. Petitioners did not claim a deduction for any loss suffered as a result of this loan on their income tax returns for either 1957 or 1958. The loss was apparently claimed by petitioners for the first time during respondent's examination of their income tax returns. In the statutory notice of deficiency, respondent accepted the fact that a loan of $3,700 was made by Ray to Lake City, and that the loan became worthless in 1957. Respondent determined that petitioners were entitled to a bad debt deduction, but because the debt was not created or incurred in connection with petitioner's trade or business it was determined that the loss was with respect to a nonbusiness debt to be treated as a capital loss under section 166(d)[6] *254 and section 1211. Thus, the only issue is whether the loan to Lake City created a business or a nonbusiness debt. It is not entirely clear just what arguments petitioners are relying upon in claiming they should be allowed to deduct the entire amount in the year 1957. It might be construed from the petition filed in this case that petitioners are contending [7] they are entitled to deduct the full amount under section 1244, although they do not argue this point on brief. It is perfectly clear that such an argument would be totally without merit. Section 1244 allows an ordinary loss deduction for losses on stock of a small business corporation, but the section does not apply to loans to a small business corporation. And if the loan was *255 considered a contribution to the capital of Lake City it is nevertheless clear that the deduction would not qualify under section 1244 of the 1954 Code for the same reasons the worthless stock did not qualify stated in our discussion of issue 1. Petitioner's argument on brief appears to be that it was necessary for Ray to loan the money to the corporation, and to subrogate his claim to that of the Small Business Administration on a loan made by it to the corporation in 1955, in order to insure continuation of his job which produced his income; therefore the *256 loss should be deductible in full in 1957, presumably as a business bad debt. Section 166(a)(1) allows a deduction for any debt which becomes worthless within the taxable year; however, section 166(d) provides that this rule shall not apply to a nonbusiness debt of an individual taxpayer. [8] Losses resulting from nonbusiness debts are to be considered as losses on the sale or exchange of capital assets held less than 6 months. Nonbusiness debts are defined as debts other than (1) those created or acquired in connection with a trade or business of the taxpayer, or (2) debts the losses from the worthlessness of which are incurred in the taxpayer's trade or business. Based on the record in this case it is clear that, with the exception of his participation in two partnerships engaged in strip mining operations, Ray's only trade or business was that of being an employee. There is nothing that suggests this loss was incurred in the trade or business of either of the partnerships, and therefore it is not deductible on that ground. Cf. Ray A. Myers, 42 T.C. 195 (1964). Similarly, there is no evidence that Ray was in the business of promoting or financing corporations, or of lending *257 money, in which business the loss may have been incurred. Cf. Whipple v. Commissioner, 373 U.S. 193 (1963); H. Beale Rollins, 32 T.C. 604 (1959), affd 276 F. 2d 368 (C.A. 4, 1960). For an employee to deduct the loss from a loan made by him to his corporate employer as a business bad debt, he must show that the loan was necessary to keep his job or was otherwise proximately related to maintaining his trade or business as an employee. Whipple v. Commissioner, supra; Eugene H. Rietzke, 40 T.C. 443 (1963). Here there is absolutely no evidence that Ray was required to make the loan to Lake City in order to keep his job with that company. Cf. Trent v. Commissioner, 291 F. 2d 669 (C.A. 2, 1961), reversing 34 T.C. 910 (1960); Ray A. Myers, supra.Although Ray apparently was a stockholder, officer, and employee of Lake City, he has not offered any evidence that would substantiate a finding that the loan was proximately related to, or even remotely connected with, his trade or business. Darwin O. Nichols, 29 T.C. 1140 (1958). The little evidence we do have indicates the loan was made to Lake City in 1951, about the time the corporation began business, and we can only assume that *258 it was made to provide the corporation with working capital to carry on its own business. This does not proximately relate it, or make it incident, to Ray's trade or business of being an employee. George P. Weddle, 39 T.C. 493 (1962), affd. 325 F. 2d 849 (C.A. 2, 1963). We sustain respondent's determination on this issue. Issue 3. Worthless Account Receivable Deduction In their income tax return for the year 1957, petitioners deducted the amount of $2,300 which was described as follows: "Lake City - La-Lite Aggregate Corp. Operating Account Loss." In the statutory notice of deficiency respondent determined that this deduction was not allowable because petitioners "have not established that * * * [they] are entitled to such a deduction." In the petition, petitioners state as follows: 4. The determination of tax set forth in said notice of deficiency is based upon the following errors: * * *
B. Disallowing operating loss on account with Lake City Light Aggregate Corporation, Lake City, Tennessee $2,300.00 the taxpayer operated, as an individual, the Flame Coal Sales Co. in the mining of strip coal for the above named corporation. The taxpayer records show that said Corporation was *259 indebted to him in the sum of $2,837.50 and said records reveal that the cost to the taxpayer in this account was $2,049.46. Exhibit B. That said Corporation became insolvent in 1957, that the taxpayer filed a claim with the Receiver. That during the year 1957 no payment had been received by the taxpayer on this account. That the taxpayer is entitled to an operating loss of the amount of the cash cost to him in the year that Corporation became insolvent in 1957 in the sum of $2,049.46. In the brief filed by petitioners, it is argued that "Ray Franconi operated a partnership with a Mr. Paeper in procuring and selling the Lake City Lightweight Corporation coal and suffered a business loss of $2,837.50. $835.16 of this loss was not deductible, being paper profits on the operation of the business * * *." Apparently petitioners have reduced their claimed deduction, and the loss is now admitted to be only $2,002.34. After carefully reviewing all the evidence we have come to the conclusion that the petition as quoted above is in error, insofar as it alleges that the $2,300 indebtedness of Lake City was due to Flame Coal Sales Co. Ray and Fred Paeper, "a partnership doing business as the Lite *260 Construction Company," (hereafter referred to as Lite Mine) filed a claim on December 31, 1956, in the Lake City receivership proceeding alleging that Lake City was indebted to Lite Mine in the amount of $4,600 for coal sold to Lake City, and for services rendered in obtaining shale for use in the Lake City plant. The Lite Mine was allowed as a common creditors' claim in the final report of the receiver (and special master's report) in the Lake City receivership proceeding, and the amount of $193.44 was paid on this claim in September 1960. We find no evidence that a claim was filed by Flame Coal Sales Co. in the Lake City receivership proceeding. The claim filed in the receivership proceeding itemizes the account in great detail. Lite Mine delivered more than 700 tons of coal, and performed more than 560 hours of work, in stripping operations, on behalf of Lake City, and had not been paid the balance of $4,600 due on this account. It would thus appear that the loss involved in this issue was on indebtedness due from Lake City to Lite Mine rather than Flame Coal Sales Co. But what is said following would apply to disallow the deduction whether it is based on indebtedness to Lite Mine *261 or to Flame Coal Sales Co. Respondent does not contend that the claim of $2,002.34 did not become worthless in 1957. Rather, respondent maintains that Lite Mine, which at all times kept its records and filed its returns on the cash receipts and disbursements method of accounting, presumably did not report income represented by these accounts receivable in 1957 or in prior years. Respondent's regulations, sec. 1.166-1(e), Income Tax Regs., provides: (e) Prior inclusion in income required. Worthless debts arising from unpaid wages, salaries, fees, rents, and similar items of taxable income shall not be allowed as a deduction under section 166 unless the income such items represent has been included in the return of income for the year for which the deduction as a bad debt is claimed or for a prior taxable year. Similar provisions in prior regulations have been approved by this Court. See W. L. Moody Cotton Co., 2 T.C. 347 (1943), affd. 143 F. 2d 712 (C.A. 5, 1944). Furthermore, respondent contends that Lite Mine more than likely has already deducted the cost of the coal delivered, and the expense of operating the bulldozer, in an earlier year. Petitioners have offered no evidence *262 that would establish the fact that the accounts receivable had been included in income for 1957, 1958, or for some prior year. If we assume that petitioners are contending that they are entitled to a bad debt deduction under section 166(a)(1) for the worthless accounts receivable due from Lake City, we must conclude that the claimed deduction was properly disallowed by respondent because petitioners, who carry the burden of proof on this matter, have not established that the accounts receivable were included in income in 1957, 1958, or in a prior year. Furthermore, there was no evidence offered that would substantiate petitioners' claim that they are entitled to deduct out-of-pocket expenses of $2,049.46 in connection with the claim of Lite Mine against Lake City. There is no evidence that such expenditures, if any, were made in 1957 or 1958. The indications are that any such expenditures made in this connection would have been made prior to 1957. This deduction must similarly fail for lack of proof. We sustain respondent's determination on this issue. Decision will be entered for the respondent. Footnotes
1. Lake City and La-Lite Aggregate Corp. (or company) are two separate corporations. Petitions' returns were prepared by another person, who confused the two companies. Apparently there is no dispute about the fact that the shares purchased were Lake City stock, even though the returns have erroneously listed the La-Lite Aggregate Corp. in connection with this stock loss.↩
2. All references are to the Internal Revenue Code of 1954 unless otherwise noted. SEC. 165. LOSSES. * * *
(g) Worthless Securities. - (1) General rule. - If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset. (2) Security defined. - For purposes of this subsection, the term "security" means - (A) a share of stock in a corporation; ↩
3. SEC. 1211. LIMITATION ON CAPITAL LOSSES. * * *
(b) Other Taxpayers. - In the case of a taxpayer other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the taxable income of the taxpayer or $1,000, whichever is smaller. * * *
4. SEC. 1244. LOSSES ON SMALL BUSINESS STOCK. (a) General Rule. - In the case of an individual, a loss on section 1244 stock issued to such individual * * * which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset. * * *
(c) Section 1244 Stock Defined. - (1) In general. - For purposes of this section the term "section 1244 stock" means common stock in a domestic corporation if - (A) such corporation adopted a plan after June 20, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan,
5. Pub. L. 85-866, 72 Stat. 1676 (Sept. 2, 1958).↩
6. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * *
(d) Nonbusiness Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange * * * of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩
7. A contention which may be inferred from the following language in the petition: "That the petitioners held notes for funds loaned to said Corporation [Lake City] in the original capital structure. "That said Corporation [Lake City] became insolvent in 1957 * * * at which time the taxpayer held said notes * * * [in the amount of] $3,700.00 or a total cost of stock and notes in the sum of * * * [$8,700] * * * "That the petitioner taxpayers are entitled to an ordinary loss deduction in year 1957 in the sum of * * * [$8,700] * * * pursuant to "* * * section 1244 of the code 1954 relating to loss on small business stock T.D. 6495↩."
8. See fn. 6.↩