MAX M. AXELROD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87288. Filed March 8, 1962.

*Morton M. Stotter, Esq.*, for the petitioner.
*Thomas J. Moroney, Jr., Esq.*, for the respondent.

OPINION.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioner's income tax for the taxable year 1957 in the amount of $2,417.33. The only issue for decision is whether petitioner is entitled to a deduction under section 166(f) of the Internal Revenue Code of 1954 as the result of a loss sustained by petitioner as guarantor of a noncorporate obligation.

All of the facts have been stipulated, are so found and are incorporated herein by reference. Those necessary to an understanding of our inquiry are recited below.

Petitioner lived in Ohio in 1957 and filed his income tax return for the calendar year 1957 on the cash basis of accounting with the district director of internal revenue at Cleveland, Ohio.

In 1948 petitioner and Stanford S. Cammer formed a partnership for the purpose of operating a cafe in Santa Barbara, California. Cammer was the active partner and operated the business. Petitioner, living in Ohio, did not actively participate in the operation of the cafe.

Due to differences which arose between petitioner and Cammer, petitioner notified the latter that unless he would agree to purchase petitioner's interest in the partnership, petitioner would institute an action for an accounting and for dissolution of the partnership. Cammer decided to purchase petitioner's interest in the partnership and borrowed the sum of $7,500 from the Lake Shore Finance Corporation, an Ohio corporation, hereinafter referred to as the finance company. Cammer delivered to the finance company his promissory note in the amount of $7,500. The funds received from the finance company were used by Cammer to purchase petitioner's interest in the partnership.

Petitioner, who owned approximately 10 percent of the nonvoting stock of the finance company, executed a separate instrument wherein petitioner became a guarantor for the payment of Cammer's note to the finance company.

By September 1957 Cammer had reduced the principal balance of the loan to $6,088.50. However, shortly thereafter, Cammer defaulted in payment of the note, and the finance company demanded payment of the balance by petitioner as guarantor of the loan. Petitioner paid the finance company the sum of $6,088.50 in 1957. On his 1957 tax return, petitioner claimed a bad debt deduction under section 166(f), I.R.C. 1954, in the amount of $6,088.50. Respondent determined that the loss was not deductible under section 166(f) and disallowed the claimed deduction.

Section 166(f) provides:

A payment by the taxpayer (other than a corporation) in discharge of part or all of his obligation as a guarantor, endorser, or indemnitor of a noncorporate obligation the proceeds of which were used in the trade or business of the borrower shall be treated as a debt becoming worthless within such taxable year for purposes of this section (except that subsection (d) shall not apply), but only if the obligation of the borrower to the person to whom such payment was made was worthless * * * at the time of such payment.

Respondent concedes that petitioner paid the sum of $6,088.50 in discharge of his obligation as a guarantor, that the debt was a noncorporate obligation, and that the obligation of Cammer to the finance company was worthless at the time of payment. But respondent contends that inasmuch as the proceeds of the loan were used by Cammer to acquire an additional capital interest, they were not used in the borrower's trade or business within the meaning of section 166(f). Petitioner argues conversely that the borrowed funds were

utilized in the borrower's trade or business since the proceeds of the loan were used to acquire petitioner's interest in the partnership, which acquisition was undertaken in order to prevent a dissolution of the business. The issue to be decided is thus reduced to whether or not the proceeds of the loan were used in Cammer's trade or business within the meaning of section 166(f).

The provision contained in section 166(f) was first written into the law as part of the Internal Revenue Code of 1954;[1] and appears to have originated in the Senate Finance Committee.[2] The phrase "used in trade or business of the borrower" is not explained in either section 166(f) of the Code or the regulations relating thereto (sec. 1.166-8, Income Tax Regs.); nor is any real light shed on the meaning of the phrase or the purpose of the provision by the Senate Finance Committee in its report.[3] And it would be of little help in deciding this issue whether the purpose of Congress in enacting section 166(f) was to confirm the administrative and judicial construction of the internal revenue laws that treated guarantors' losses as bad debt losses, as suggested by the majority opinion of the Supreme Court in *Putnam* v. *Commissioner*, 352 U.S. 82 (1956), or was simply to permit deduction of certain guaranty payments that were not deductible at all under the 1939 Code, as suggested by the dissenting opinion in the *Putnam* case.[4] So we must approach the problem unaided by any clearly defined legislative intent or any prior judicial construction.[5] Under such circumstances, we assume the statutory words were used in their ordinary and usual sense with the meaning

---

[1] H.R. 8300, 83d Cong., 2d Sess. (1954).

[2] While there was a section 166(f) in the House bill, it pertained to mortgage foreclosures and was eliminated by the Senate Finance Committee, which substituted the provision contained in the present section 166(f).

[3] S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. (1954), on section 166(f) simply states (pp. 24–25):

"Your committee also provided that business bad debt treatment will be available where a noncorporate taxpayer, who was the endorser (or guarantor or indemnitor) of the obligation of another, is required to pay the other's debt (and cannot collect it from the debtor). However, this treatment is to be available only where the debt represents money used in the other person's trade or business. Your committee believes that this treatment should be available in such cases since in most cases debts of this type usually are incurred because of business relationships."

and (p. 200):

"This subsection will allow a deduction from gross income for a loss suffered by a noncorporate taxpayer through payment during the taxable year of part or all of his obligation as a guarantor, endorser, or indemnitor of a noncorporate obligation. In order to obtain an ordinary loss, the taxpayer must establish that the proceeds of the loan were used in the trade or business of the borrower and that the obligation of the borrower, to the person to whom the taxpayer made payment in discharge of his guarantor's obligation, was worthless at the time of such payment (without regard to the guaranty, endorsement, or indemnity). * * *"

[4] Or was merely an *ad hoc* amendment designed to meet the problem of a father who had made advances to his son's business, as suggested in a footnote to an article in 70 Harv. L. Rev. 1145, 1149 (1957).

[5] We have neither found nor been cited any cases directly concerned with the scope of section 166(f), I.R.C. 1954.

commonly attributable to them. *DeGanay* v. *Lederer*, 250 U.S. 376, 381 (1919).

In our opinion, the phrase "*used in* the trade or business of the borrower" (emphasis supplied) in section 166(f) of the 1954 Code requires that the borrowed funds be directly employed in carrying on the borrower's trade or business, and that the use of the borrowed funds by Cammer to purchase petitioner's partnership interest does not meet that requirement. The borrowed funds were never available for use in the operation of the cafe nor to acquire assets for use in the business. They were used to acquire a capital asset, an interest in the partnership, for the borrower, not in the conduct or operation of his cafe business, and we do not think the stipulated facts support a conclusion that Cammer was in the business of dealing in business interests.

Furthermore, even if we could agree with petitioner that the borrowed funds could be said to have been used to prevent dissolution of the borrower's business, we do not think such a purpose under these circumstances could be considered a use in the business within the meaning of the statute. Rather than being a debt "incurred because of business relationships," as mentioned in the committee report (footnote 3), this was a debt incurred to sever a business relationship, and the guarantor, rather than the business, received the proceeds of the loan.

We believe our conclusion is the more logical application of the section to the facts in this case. The Supreme Court decided in *Putnam* v. *Commissioner, supra*, that a guarantor's loss is deductible, if at all, as a bad debt. Section 166 of the 1954 Code provides for the deduction of bad debts, and under section 166(d) this debt, not having been created or acquired in connection with a trade or business of *the taxpayer* nor incurred in *his* trade or business, would be a nonbusiness bad debt and the loss would be considered a short-term capital loss, unless recognized as a bad debt deductible to the full extent thereof under section 166(a) by reason of section 166(f). If, by enacting the exception to section 166(d) contained in section 166(f) in the case of the guaranty by a noncorporate taxpayer of a noncorporate obligation, Congress intended to encourage small businesses by making it easier for them to borrow money, it would seem that the limit of its inducement to the guarantor of small business borrowings would be to place the guarantor in the same position taxwise with respect to the deductibility of his loss as would be the borrower himself. If the borrower used the borrowed money directly in the operation of his trade or business and lost it, his loss would be deductible in full. But Cammer did not use the borrowed money directly in the operation of his trade or business; he used it to acquire for himself petitioner's interest in the partnership. Cammer's acquisition of petitioner's

partnership interest was an investment in a capital asset, *Peter P. Risko*, 26 T.C. 485 (1956), *Frank L. Newburger, Jr.*, 13 T.C. 232 (1949), and we assume his loss on the sale or other disposition thereof would have been a capital loss. Sec. 741, I.R.C. 1954; compare Rev. Rul. 55-68, 1955-1 C.B. 372. To apply section 166(f) of the 1954 Code to give this petitioner, the guarantor, a full deduction for a bad debt would seem to extend that section beyond reason.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

MULRONEY, *J.*, dissenting: Under section 166(f), I.R.C. 1954, the guarantor has the burden of showing the borrower "used" the proceeds of the loan in his "trade or business." I think he would satisfy his burden if he showed the proceeds of the loan were the funds used by the borrower to start up in the cafe business, acquire an existing cafe business, or, as here, buy out the business interest of his remaining partner in the cafe. The statute requires the guarantor to do no more than trace the loan proceeds to the borrower's cafe business. The majority holds that before the statute applies the guarantor must show that the loan proceeds were "directly employed in carrying on the borrower's trade or business." I see no reason for such a construction, but if it is warranted it would seem to me the borrowed funds, which were used to buy the interest of the borrower's partner in the assets of the cafe business, were directly employed in carrying on the borrower's sole proprietorship.

Admittedly, if the funds were used by the borrower to purchase merchandise and fixtures for use in his cafe, the borrowed funds would be "used in the trade or business of the borrower." I see no difference when the funds are used to buy out another's one-half interest in the merchandise and fixtures that are to be used in the borrower's cafe business. I would hold for the petitioner.

FORRESTER and FAY, *JJ.*, agree with this dissent.

---

FAY, *J.*, dissenting: I respectfully disagree with the majority opinion of the Court that the proceeds of the loan were not used in the trade or business of Cammer within the meaning of section 166(f). The prerequisite to the deduction under section 166(f) that the borrower use the proceeds of the loan in his trade or business was, I believe, intended to prohibit a deduction where the borrower uses the funds for a purpose unrelated to his business. In the instant case the borrower was faced not only with the threat of a suit for an accounting but with the possible disruption or collapse of the business. In an effort to forestall such a chain of events, he borrowed funds which he used to purchase petitioner's interest in the partnership.

Under these circumstances I believe that the proceeds were used in the trade or business of the borrower in the ordinary and usual sense of the term.

FORRESTER, *J.*, agrees with this dissent.