Max AXELROD, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 15043.

United States Court of Appeals
Sixth Circuit.

July 17, 1963.

Morton M. Stotter, Cleveland, Ohio, Stotter & Elden, Cleveland, Ohio, on brief, for petitioner.

Thomas A. Skornia, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attorneys, Department of Justice, Washington, D. C., on brief, for respondent.

Before WEICK, Circuit Judge, and BOYD and THORNTON, District Judges.

BOYD, District Judge.

This appeal from the decision of the Tax Court of the United States [1] turns upon the interpretation of Section 166(f) of the Internal Revenue Code of 1954, Title 26 U.S.C. As best we can determine, this is the first cause directly calling for judicial construction of this section,[2] which provides as follows:

"§ 166. Bad debts—

\* \* \* \* \* \*

"(f) Guarantor of certain noncorporate obligations.—A payment by the taxpayer (other than a corporation) in discharge of part or all of his obligations as a guarantor, endorser, or indemnitor of a noncorporate obligation the proceeds of which were used in the trade or business of the borrower shall be treated as a debt becoming worthless within such taxable year for purposes of this section (except that subsection (d) shall not apply), but only if the obligation of the borrower to the person to whom such payment was made was worthless (without regard to such guaranty, endorsement, or indemnity) at the time of such payment."

The facts of the case were stipulated in the Tax Court.

The appellant taxpayer, a resident of Ohio, and Stanford S. Cammer, a resident of California, formed a partnership in 1948 for the purpose of operating a cafe in Santa Barbara, California. Cammer was the active partner in the operation of the business. As a result of differences between the partners, appellant notified Cammer that he would institute court action for dissolution of the partnership and an accounting unless Cammer agreed to purchase the appellant's interest in the partnership. In 1953 Cammer did purchase petitioner's interest for $7,500.00, which amount he had borrowed from an Ohio finance company in which appellant owned a ten per cent of the non-voting stock. By separate instrument appellant guaranteed payment of the loan. In approximately September 1957, with a balance of $6,088.50 outstanding on the loan, Cammer defaulted. Demand for payment from the taxpayer as guarantor was made by the finance company. Appellant paid the outstanding balance in 1957 and in his income tax return for that year claimed a bad debt deduction in this amount under Section 166(f) of the Code of 1954. The claim for deduction was disallowed by the Commissioner, appellee herein. It is stipulated that the debt became worthless in 1957. With three judges dissenting, the Tax Court upheld the Commissioner's disallowance of the claimed deduction.

The Tax Court majority construed the phrase "used in the trade or business of the borrower" in Section 166(f) as requiring that the borrowed funds be "directly employed in carrying on the borrower's trade or business" or be put to internal use in the non-corporate enterprise. This requirement was held unmet by the use of the funds by the borrower, Cammer, in order to purchase a capital interest in the cafe business for the preservation of this going concern.

As mentioned, we are neither referred to nor do we find any case directly dealing with this statutory section and the legislative history behind it is sparse, affording little guidance for determining what is meant by the section's requirement that the proceeds of the guaranteed loan be "used in the trade or business of the borrower." Section 166(f) originated in the Senate Finance Committee and appears for the first time in the Code of 1954. The only statement bearing on congressional intent behind this section is found at pp. 24, 25 of Senate Report Number 1622, 2nd Session, 83rd Con-

---

1. 37 T.C. 1053.

2. See generally, Mr. Justice Harlan's dissent, Putnam v. Commissioner, 352 U.S. 82 at 99–102, 77 S.Ct. 175 at 183–185, 1 L.Ed.2d 144.

gress, which reads in pertinent part as follows:

> "Your committee also provided that business bad debt treatment will be available where a noncorporate taxpayer who was the endorser (or guarantor or indemnitor) of the obligation of another, is required to pay the other's debt (and cannot collect it from the debtor). However, this treatment is to be available only where the debt represents money used in the other person's trade or business. *Your committee believes that this treatment should be available in such cases since in most cases debts of this type usually are incurred because of business relationships.*" U.S.Code Congressional and Administrative News 1954, p. 4655. (Emphasis supplied.) [3]

Generally, under Section 166 business bad debts are fully deductible, whereas non-business bad debts receive capital loss treatment. Section 166(f) designates a non-corporate guarantor's loss in an appropriate case as a business bad debt. As can be seen from the quoted Senate Report, the debt of the principal is the focus of this section. Usually, the report indicates, the principal's debt is incurred because of business relationships where the proceeds of the original obligation are used in the trade or business of the borrower. It is from the original obligation that the "business" aspect is derived in order to characterize the guarantor's loss as a business bad debt, deserving of full deduction, as distinguished from a non-business bad debt, deserving of capital loss treatment. The inevitable distinction of "business" versus "personal" uses is suggested. See examples 2 and 3 of the Tax Regulations, Title 26, Part 1, Section 1.166-8, C.F.R.

The Tax Court majority reasoned that the borrower's indebtedness was not incurred because of business relationships, but was incurred to sever a business relationship with the guarantor rather than the business receiving the proceeds of the loan. The majority opinion further noted that in the event the borrower sustained a loss on the interest here acquired with the loan proceeds this loss would receive capital loss treatment under the tax laws, whereas the guarantor would enjoy a full deduction if he were called upon to pay the balance of the loan. However, noted the majority, should the loan proceeds be used by the borrower directly in the carrying on of his business, losses therefrom would be fully deductible, as would the guarantor's loss in the event the latter had to pay on his guaranty. Congress, reasoned the Court, would not, by way of encouraging loans to small businesses, offer a more advantageous tax position to guarantors as inducement than the small business borrower himself would occupy.

The two dissenting opinions for the minority express the view that the majority interpreted the language of Section 166(f) too narrowly and with this general view we are in agreement.

We do not consider the acquisition of a capital interest in a going non-corporate business in order to preserve its existence as reflecting business relationships any less than acquisition of assets for inventory or of property for the production of income. If proceeds of a loan find a proximate route into the borrower's trade or business, whether as the means for the purchase of a further capital interest in the non-corporate borrower's going business to effect its preservation or for the purchase of a fixture, the fact that "business relationships" as opposed to "personal relationships" caused the incurrence of the obligation suffices to bring the guarantor within this section upon his payment of the obligation. Whether the proceeds were used to commence, sustain, or sever a business relationship, the common denominator of these situations is "business relationship," the existence of which always precedes a severance thereof.

We have no ready means for ascertaining whether Congress through enactment

---

3. The Tax Court majority felt that this section shed no light upon the congressional purpose behind Section 166(f).

of this section intended to facilitate small business borrowings, nor can we readily determine for purposes of this section of the statute to what degree the congressional disposition favored inducements to guarantors of small business obligations. Legislative grace does appear to have been dispensed to enable deductions of the kind here under consideration. There has been compliance here with each and all of the prerequisites of Section 166 (f) entitling the taxpayer to a full deduction in the amount paid under his guaranty herein. It follows that the decision of the Tax Court is reversed.