## Samuel G. PAYTE

### v.

## UNITED STATES of America.

### Civ. A. No. 4–76–344–E.

United States District Court,
N. D. Texas,
Fort Worth Division.

Jan. 8, 1979.

Daniel L. Penner, John G. Truelson, Fort Worth, Tex., for plaintiff.

M. Bruce Peele, Tax Div., Dept. of Justice, U. S. Atty., Michael P. Carnes, Asst. U. S. Atty., Martha Joe Stroud, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

MAHON, District Judge.

This lawsuit is a civil action for the refund of Federal income taxes pursuant to 28 U.S.C. § 1346(a)(1). The case is before the Court on cross-motions for summary judgment.

Plaintiff Samuel Payte was involved in two business partnerships with E. L. Baker and Irwin Krauss which dealt in real estate joint ventures for the development of commercial and residential property. In 1968 the plaintiff and his two business partners executed an agreement among themselves that in the event of the death of one of the partners, the two surviving partners would purchase the deceased partner's interest. The terms of this 1968 agreement among the partners provided for a downpayment of ten percent of the value of the deceased partner's interest and the execution of a six year promissory note for the balance. The note was to bear interest at the rate of four percent per year and was to be secured by property belonging to the joint venture.

In November 1969 E. L. Baker of the partnership died. Plaintiff and Mr. Irwin Krauss as the surviving partners appraised the value of the decedent partner's interest at $1,364,336.92. In accordance with the 1968 agreement, surviving partners Payte and Krauss made a cash payment of $136,426.92 and in February 1970 executed a six year promissory note for $1,227,900 at four percent per annum on the unpaid balance to the Fort Worth National Bank, trustee for the Baker Estate.

In 1971 plaintiff Payte paid the Fort Worth National Bank, trustee for the estate of the deceased partner, the sum of $83,464.00 of which $24,038.64 was interest on the promissory note.

Subsequently on his 1971 income tax return plaintiff claimed the interest expense

as an itemized deduction. The interest expense was treated as being attributable to trade or business and as allowed by Section 172 of the Internal Revenue Code was carried back to offset plaintiff's 1968 tax liability for business income. Based on this 1971 carryback to 1968, plaintiff in 1972 received a refund of $16,813.61 plus interest of $567.67.

Subsequently plaintiff's carryback was audited and in 1975 plaintiff was assessed tax liability for 1968 of $16,546.90, with additional interest of $3,242.97 and a penalty of $918.13. It is this sum of $20,708.00 which is in controversy.

The tax question before this Court is whether the interest paid by the plaintiff on the promissory note, the proceeds of which were paid to the deceased partner's estate for the purchase of partnership interest, should be characterized as attributable to plaintiff's trade or business, and therefore deductible, or characterized as an interest expense resulting from the acquisition of a capital investment and not fully deductible.

Plaintiff Payte's position places great importance on the case of *Axelrod v. Commissioner*, 320 F.2d 327 (6th Cir. 1963) in which it was held that the acquisition of capital interest in a partnership so that the existence of the business enterprise might be preserved may be favorably compared for business expense tax purposes to either the acquisition of assets by the business for inventory or to property acquisition for income production.

The focal point of plaintiff's position is that the purchase of the deceased partner's interest pursuant to the 1968 agreement was essential to preserve the going noncorporate business of the partnership. Clearly in the *Axelrod* case the purchase of the partnership interest was essential to preserve the going noncorporate business because one of two partners in the business partnership in that case had notified the sole other partner that unless the partnership interest was purchased, litigation

would be instituted for dissolution of the partnership and an accounting.

The briefs filed by plaintiff in this case reflect that the reason that the three partners entered into the 1968 agreement was to provide that the family or heirs of a deceased partner would not become involved in the actual business operations of the partnership, and to assure payment of partnership indebtedness. It is plaintiff's assertion that without the 1968 agreement and the 1970 execution of the promissory note the partnership would upon the death of a partner have been forced to liquidate. The touchstone of plaintiff's position is the characterization of the 1968 agreement's purpose as essential to the continuation of the business. Considerable emphasis is placed by plaintiff on the fact that the purchase by the surviving partners of the deceased partner's interest was a purchase of interest in a going business in which Payte had a present and a continuing interest in preserving the existence of the business. This fact does distinguish Payte's purchase of partnership interest from those cases which disallowed deductions by specifically distinguishing *Axelrod, supra*. *See Robert E. Imel*, 61 T.C. 318 (1973); *William K. Coors*, 60 T.C. 368 (1973); *Frank J. Saia*, ¶ 74, 300 P-H Memo TC (1970). These cases distinguish *Axelrod, supra* on the basis that a central feature of *Axelrod, supra* is that the claimed expenses were for the purchase of interest in the claimant's own ongoing business. The expense in question in order to qualify for deduction must be attributable to the taxpayer's trade or business operations. *Harding v. United States*, 113 F.Supp. 461, 125 Ct.Cl. 585 (1953).

However, the key question in order to properly analogize an expense to that of *Axelrod, supra* is whether the expense is essential to the very continuing existence of the business itself. Clearly in *Axelrod, supra* with the threat of litigation for dissolution and accounting, the continued existence of the business was in question. It is this analysis which has been taken by the

United States Court of Appeals for the Fifth Circuit. *See Five Star Manufacturing Co. v. Commissioner of Internal Revenue*, 355 F.2d 724 (5th Cir. 1966); *United States v. Smith*, 418 F.2d 589 (5th Cir. 1969); *Jim Walter Corp. v. United States*, 498 F.2d 631 (5th Cir. 1974).

In commenting on *Five Star Manufacturing Co., supra* and *United States v. Smith, supra,* Judge Tuttle pointed out in the *Jim Walter Corp.* case the nature of the business emergency analysis,

> . . . The expenditures in those two cases were made to save the corporation from dire and threatening consequences. The court in *Five Star* stressed the extraordinary factual situation which showed a business emergency. Similarly the district court in *Smith* found that the corporation paid the liability in order to save its business and therefore the payment was a noncapital expenditure. In the instant case no similar emergency business purpose was presented; in fact, the district court expressly pointed out that the corporation was prospering. We think the principle followed in the two cited cases should not be extended beyond the facts of the cases.

*Jim Walter Corp., supra* at 639. In his analysis Judge Tuttle also stated,

> . . . [W]e cannot accept appellant taxpayer's argument that *Five Star* and *Smith* set forth any broad principle that if an expense of recapitalization or other capital structure reformation serves a business purpose other than the acquisition of property it is deductible, even though it may appear to be or in fact is, a part of a capital transaction. Rather, we read *Smith* and *Five Star* as being limited to situations where a payment to purchase a capital asset, though capital in nature, is necessary to the taxpayer's survival. *See H. and G. Industries, Inc. v. C.I.R.*, 3rd Cir., 495 F.2d 653 (1974).

*Jim Walter Corp., supra* at 639.

Plaintiff Payte in an initial memorandum cited the allowed deduction in *Five Star Manufacturing Co., supra* as supporting his position. In a subsequent supplemental memorandum plaintiff has contended that the analysis of *Five Star Manufacturing Co., supra* and its subsequent limitation by *Jim Walter Corp., supra* are inapplicable to plaintiff's situation since those cases concern corporate acquisitions rather than the acquisition of additional partnership interest. This Court finds this distinction by plaintiff to be without merit.

The focus of this Court in determining the deductibility of plaintiff's claim is an analysis of the origin and character of the claim. The United States Supreme Court has stated:

> [T]he origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was a 'business' or 'personal' and hence whether it is deductible or not . . . .

*United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). It is this origin and character analysis that guided the courts in *Harder Services, Inc. v. Commissioner*, 67 T.C. 585 (1976); *Jim Walter Corp., supra*; and *Estate of Meade v. Commissioner*, 489 F.2d 161 (5th Cir. 1974). As the test states, if the expense was 'business' plaintiff Payte is entitled to his deduction. In the alternative, "It has long been recognized, as a general matter, that costs incurred in the acquisition or disposition of a capital asset are to be treated as capital expenditures." *Woodward v. C.I.R.*, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970).

Plaintiff contends that the purchase of the deceased partner's interest in the partnership pursuant to the 1968 agreement was to effect the preservation of the existence of the partnership and was necessary to the survival of the business. It is true that as a matter of law under the Texas Uniform Partnership Act § 31(4) the death of a partner will create the dissolution of a

partnership *unless* (emphasis supplied) the agreement between the partners provides otherwise. Indeed the 1968 agreement between the partners was a method to avoid dissolution. However, this Court finds that the purchase of the deceased partner's interest cannot be characterized as essential to the survival of the partnership. The terms of the 1968 agreement and the subsequent purchase were motivated by the financial, personal, and business planning among the partners. The expense was not dictated by outside forces directly threatening the business partnership's survival, and thus the facts are not analogous to *Axelrod, supra* or to *Five Star Corp., supra. See Harder Services, Inc. v. Commissioner, supra,* at 596. The origin and character of the claim to which the expense was incurred was the 1968 agreement entered into so that the family or heirs of a deceased partner would not become involved in the actual business operations of the partnership. As such plaintiff's acquisition of the partnership interest though based on a business consideration was an acquisition of a capital asset for which the disallowance of the business deduction was proper. Accordingly, we conclude that plaintiff is not entitled to deduct the interest claimed as a business expense.

It is, therefore, ORDERED that plaintiff's Motion for Summary Judgment be denied, and that defendant's Motion for Summary Judgment be granted.

Judgment will be entered accordingly.